By the Court:
 

 Bayard,
 
 Chief Justice.
 

 A motion for a nonsuit has been made in this case upon four different grounds, which the court will now proceed to consider.
 

 The first ground is, that there is no legal proof of the existence of the corporation. The proof adduced of this fact consists of the printed volumes of the laws published in the mode directed by the laws of'the State, and in which the original charter of the bank and the various supplements are published at large. It is contended that this charter and its supplements are private laws, and should be proved either by sworn copies or exemplifications under the great seal. In England such is the general rule; but in an anonymous case in 2
 
 Salk.
 
 566, Holt says, that an act printed by the king’s printer was always good evidence before a jury, although upon
 
 nul tiel record pleaded,
 
 such printed copy was not evidence, but there should be an exemplification. ’The laws of this State are printed and published under the inspection of the Secretary of State; to whom every law, passed during any session of the Legislature is delivered by the
 
 *94
 
 speakers,’ and it is made bis duty to publish such of them as are of a
 
 •public nature;
 
 and to collate with, and correct by the original rolls, the proof sheets of the printed copies. (2
 
 ml. Laws Del.
 
 1064;
 
 Dig.
 
 497.) The requisition of the law is not confined to the publication of the
 
 public laws
 
 strictly speaking, but directs that of the laws of a
 
 public nature.
 
 In conformity with this provision the Secretary of State has, from the organization of the government to this day, published the acts incorporating colleges, banks and turnpike companies. Such publication must have been designed to make them evidence in the usual exigencies of the affairs of society. This design of the Legislature is further manifested by the provisions of the “Act directing a new edition of the laws,”
 
 (Digest
 
 31,) which direct that “all
 
 prioate acts
 
 shall be omitted,” and immediately afterwards provides, that acts incorporating colleges, academies and schools; banks, turnpikes and other companies, may be omitted; but of these acts which have been printed among the laws, a
 
 statement
 
 shall be made of such matters as shall be deemed of public concern: and then, by a subsequent act concerning this revised edition, (vol 8, 14,) declares that such
 
 statement
 
 shall be admissible in evidence. It would be preposterous to say that the statement should be evidence, and that the printed act at large was not. It is true, that in
 
 pleading
 
 the courts notice only the public acts strictly speaking; and that such acts which we have just referred to, although of a public nature, must be pleaded; and it may be that, upon the plea of
 
 mil tiel record,
 
 we might require an exemplification to sustain the proferí, but we are clearly of opinion that the printed acts are evidence before the jury.
 

 The second ground is, that the plaintiffs received the funds and placed them in the hands of a third person without counting, and are now estopped to say that the statement left by the defendant is not true. The facts are, that the defendant in making up his settlement book on the 4th October 1837, stated in his memorandum that there were in the vault of the bank $71,113: and he ceased from that time to perform his duties as cashier. The teller, who lived in the same house with him, took possession of the funds of the bank, and performed his duties on the 5th, 6th and 7th of October, without counting the funds in the vault; but, assuming the memorandum of the defendant to be true, made up his daily settlement, and set down the funds in the vault to be $71,113. On the 9th of October, the board of directors vacated the appointment of the defendant, and elected the teller cashier in his place, thus clothing him with the legal and resporisiblc charge of the funds of the bank. The new cashier, with
 
 *95
 
 out counting the funds, continued-upon the faith of the memorandum of the defendant to make up his daily settlement book, and to state the funds in the vault to be as stated by the defendant, with the exception of two packages of notes which were taken out for the use of the bank, until the 19th of October, when upon his suggestion, the funds in the vault were counted, and it was ascertained that there was a deficiency of $4,500. These facts are relied upon as being an admission on the part of the plaintiffs, that there were $71,113 in the vault when the defendant ceased to have .the charge of the funds and to act as cashier; and to be such an admission as estopps them from showing the contrary. Estoppels in pais, though they cannot be pleaded, but are given in evidence to the court and jury, yet may operate under the direction of the court as effectually as a technical estoppel, and must depend on the circumstances of the case. The general rule applicable to them is, that “a party will be concluded from denying his
 
 own acts and admissions,
 
 which were expressly designed to influence the conduct of another, and did so influence it when such denial will operate to the injury of the latter.” The rule is so laid down in 8
 
 Wend.
 
 483,
 
 Welland Canal Co.
 
 vs.
 
 Hathaway.
 

 The principle is, that it would be against good conscience and honest dealing to obtain such unfair advantage; and the rule assumes it to be true, that the party has been
 
 injluenced
 
 in his
 
 conduct
 
 and
 
 injured
 
 by it. If a cashier or other officer upon going out of office should demand, upon surrendering his trust, an acknowledgment of the delivery of what he surrendered, and such acknowledgment was made, the party making it would be estopped from showing the truth, because he has
 
 injluenced
 
 the
 
 conduct
 
 of the officer, and induced him to waive the proof which he had it in his power to obtain, and the subsequent denial would operate to his injury in that particular. But is such the case in this instance? Did the defendant ask a count, or any acknowledgment of the correctness of his memorandum of the funds in the vault? Was his conduct in any way influenced by the memorandum of Mr. Sparks as teller, or in his subsequent character as cashier? If not, then although his proof may be more difficult, yet that circumstance alone, which results from his own conduct cannot estop the plaintiffs from showing the truth, since it was not the result of the acts or admissions of the plaintiffs or their agent, nor designed by them to be so. We are.decidedly of opinion that the circumstances relied upon are no estoppel, but are matters of evidence and discussion before the jury.
 

 The third ground is, that the capital having been enlarged by the
 
 *96
 
 act of 1837, there was a corresponding enlargement of the duties of the cashier; and that, the bohd having been given before this act, is not obligatory upon the defendant. The simple answer to this proposition is that there was no enlargement of the duties of the officer. The sphere of his duties was the same, although the subject matter of his charge might be increased, which is no more than what happens from day to day from fluctuations in the amount of deposites.
 

 IVales,
 
 Rogers
 
 and
 
 Rogers, jr.,
 
 for the plaintiffs.
 

 Bayard
 
 and
 
 Clayton,
 
 for defendant.
 

 The fourth ground is, that the cause of action is not proved to have arisen within two years, the period of limitation by the act of assembly. The defendant is bound by his obligation to make and give full'satisfaction and recompense to the plaintiffs for all monies, bills, notes and effects which shall come to his hands. If he did not deliver the funds to the plaintiffs upon his quitting his office, then there was a breach of the obligation and the cause of action arose; and that breach is the very point in issue, and which is to be tried by the jury.
 

 The case went on before the jury, and resulted in a verdict for the defendant.